# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

**Shartese McHenry**,

    Plaintiff,

v.

**Lincare Inc.**, and **Kolby Lanning**,

    Defendants.

Case No. 15-CIV-343-RAW

## ORDER

Before the court is the motion of the defendant Lincare, Inc. for summary judgment.[1] Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim. *J.V. v. Albuquerque Public Schs.,* 813 F.3d 1289, 1296 (10th Cir.2016). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wright v. Experian Info. Sols., Inc.,* 805 F.3d 1232, 1239 (10th Cir.2015).

---

[1] Defendant Kolby Lanning has been dismissed as a named defendant (#58).

1

Plaintiff was employed by defendant as a Sales Representative and was the only African American employee at defendant's Muskogee office. She began employment on August 29, 2011 and was terminated on July 11, 2014. Defendant contends that plaintiff was terminated for her failure to provide a date certain upon which she could return to work from medical leave. Plaintiff contends the true motivations were otherwise, and violative of federal employment law.

At the time plaintiff was hired, Staci Bell was the Manager of defendant's Muskogee office.[2] In July of 2013, Kolby Lanning ("Lanning") became the Manger. In January, 2014, Lanning became District Manager and in March, 2014, Tera Moore became Center Manager. On February 20, 2014, plaintiff received a written warning for inappropriate conduct in the office. The same day, Plaintiff contacted the Lincare Human Resources Department ("HR") and lodged a complaint of racial discrimination, citing various incidents going back as far as plaintiff's first week of employment. Linda Feller, HR Manager, began an investigation of plaintiff's complaint.

On February 25, 2014, plaintiff presented a doctor's note stating plaintiff would be off work due to job stress until March 20, 2014. Lincare granted plaintiff leave under the

---

[2]The vast majority of the following facts are taken from defendant's "statement of material facts as to which no genuine controversy exists" in its brief. (#41) These were largely not objected to by plaintiff, except insofar as plaintiff challenged the supporting affidavit of Paula Adams (#41-3) as conclusory and self-serving. The court does not find the affidavit conclusory. In addition, the Tenth Circuit holds that an otherwise proper affidavit is legally competent for use in summary judgment briefing "irrespective of its self-serving nature." *Sanchez v. Vilsack,* 695 F.3d 1174, 1180 n.4 (10th Cir.2012).

Family Medical Leave Act ("FMLA"). On March 10, 2014, plaintiff provided a second note from the same doctor, stating that plaintiff would be off work until April 2, 2014. On April 3, 2014, plaintiff submitted a third note from the same doctor, stating plaintiff would be off work until April 28, 2014.

On May 5, 2014, Tera Moore read plaintiff a Documented Verbal Warning for not communicating with her supervisor when plaintiff needed time off for medical appointments.[3] During this meeting, plaintiff became upset and disputed the basis for the warning. Moore tore up the warning and stated it was a misunderstanding. On the same date, plaintiff provided a fourth note from the same doctor, stating plaintiff would be off work due to stress until May 26, 2014. On May 27, 2014, that doctor cleared plaintiff to return to full work activity. On May 28, 2014, Lincare informed plaintiff that she had exhausted her leave under the FMLA and would need to complete a Statement of Disability to determine if Lincare could accommodate the continued absences, and that Lincare would need to know the frequency and duration of future absences.

On May 29, 2014, plaintiff filed a workers' compensation claim for workplace stress, and on June 2, 2014, was informed the claim was denied. On June 2, 2014, plaintiff reported that she sustained an on-the-job injury on May 30, 2014, from bumping her knee on a file cabinet, and wanted to start a workers' compensation claim for her knee injury. On June 2, 2014, plaintiff submitted a fifth note from the same doctor, stating that plaintiff would be off

---

[3] Defendant's brief lists the date as May 5, 2015 (#41 at page 10 of 33 in CM/ECF pagination, ¶18), but this appears to be a typographical error. (*see* #41-7).

3

work due to stress until June 9, 2014. On June 9, 2014, plaintiff filed a workers' compensation claim for her knee injury.

On June 9, 2014, Linda Feller from HR sent plaintiff an email about not receiving the Statement of Disability, that her absences had exceeded the number allowed under the FMLA and that without the Statement of Disability, Lincare would not be able to determine whether it could accommodate her. On June 11, 2014, plaintiff's workers' compensation doctor placed her on a work restriction that required her to sit 50% of the time. Lincare stated this was not a restriction it could accommodate due to the nature of the Sales Representative job. Instead, Lincare granted plaintiff additional leave time.

On June 13, 2014, plaintiff filed a Charge of Discrimination with the EEOC for discrimination based on gender and race, and for retaliation. On June 17, 2014, plaintiff presented another physician's note with work restrictions that required plaintiff to sit 75% of the time. Lincare provided plaintiff with additional medical leave. On June 20, 2014, plaintiff's workers' compensation claim regarding her knee was denied.[4]

Plaintiff's first claim is for race discrimination in violation of Title VII.[5] Intentional discrimination may be proven either by direct evidence of discrimination (e.g., oral or written

---

[4] Lincare's brief lists the date as June 20, 2015 (#41 at page 12 of 33, ¶36) and the Adams affidavit has the same date. (#41-3 at ¶21). Given the chronology of events, the court assumes this too is a typographical error. Similar mistakes appear at #41 at 12, ¶37 and #41-3 at ¶22.

[5] Title VII forbids not only intentional discrimination based on "disparate treatment" but also practices that are fair in form, but discriminatory in operation, most often referred to as "disparate impact" discrimination. *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1220 (10th Cir.2013). Plaintiff proceeds under the former theory.

statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination. *See Burns v. Board of Cnty. Com'rs of Jackson Cnty.,* 330 F.3d 1275, 1283 (10th Cir.2003). If a plaintiff offers no direct evidence of discrimination (as here), the court applies the burden-shifting analysis articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). To establish a prima facie case based on disparate treatment, plaintiff must demonstrate that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) defendant treated her less favorably than others not in the protected class. *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir.2012).

The court finds the first element satisfied.[6] Defendant challenges the second element, making the intriguing argument that reprimand, discipline, and even termination do not qualify as "adverse employment actions," and citing authority for the proposition. The court declines to adopt this argument.[7] There is authority for the court's position as well. *See, e.g., Pittman v. Amer. Airlines, Inc.,* 2016 WL 3129228, *9 (N.D.Okla.2016)("[Plaintiff] satisfies the second element because her termination qualifies as an adverse employment

---

[6]Defendant's brief states "Lincare does dispute that Plaintiff is a member of a protected class." (#41 at page 14 of 33). The brief, however, immediately moves to the other three elements and the court assumes the word "not" has been inadvertently omitted.

[7]The differing conclusions may arise from an alternative statement of the prima facie case, requiring that the adverse employment action occur under circumstances giving rise to an inference of unlawful discrimination. This court considers adverse employment action as a discrete issue, as *Khalik* directs.

action.") It is also more in keeping with the authority that "[t]he burden of establishing a prima facie case in the *McDonnell Douglas* framework is not onerous." *Lobato v. New Mex. Environ. Group,* 733 F.3d 1283, 1293 (10th Cir.2013).

Defendant also challenges the third element, arguing that plaintiff's extended medical leave demonstrates she was not "qualified" for the position. The court rejects this argument as well. The court does find, however, that plaintiff has not established the fourth element. The court agrees with defendant that "Plaintiff has not identified any other similarly-situated employees in a non-protected class who were treated differently." (#41 at page 18 of 33). Plaintiff has responded that "several witnesses can attest to the fact that Plaintiff was treated less favorably than other similarly situated employees at Lincare." (#49 at page 20 of 31). The court's examination of the evidence cited leaves the court unpersuaded, however. The court will complete the analysis in the event the court is incorrect on this point.

Assuming *arguendo* that plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *Bennett v. Windstream Communications, Inc.,* 792 F.3d 1261, 1266 (10th Cir.2015). The court finds defendant has done so, specifically plaintiff's failure to return from medical leave. At this point, the burden returns to plaintiff to demonstrate pretext – that is, to show that the employer's proffered reason is untrue and that prohibited discrimination is the true reason for the adverse action. "The plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

6

legitimate reasons for its actions that a factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1267.

Plaintiff's contention in regard to pretext is that "Plaintiff's termination was based on an arbitrary application of Defendant's own policy regarding the Americans with Disabilities Act." (#49 at page 20 of 31). Plaintiff's burden is to show "a genuine issue of material fact as to whether the stated reason is pretextual." *Hollis v. Aerotek, Inc.,* 2016 WL 3959204, *3 (10th Cir.2016). The court concludes plaintiff has not met this burden. As defendant summarizes the record: "Plaintiff received three times as much leave as Lincare typically grants its employees. After eighteen weeks, Plainitff still could not provide Lincare with a date when she could return to work." (#41 at page 20 of 33). The record does not reflect a genuine issue of material fact that defendant's application of leave policy was arbitrary. Summary judgment is appropriately entered as to plaintiff's racial discrimination claim.

Plaintiff next asserts a claim for hostile work environment. To carry her burden at the prima facie stage, plaintiff must establish (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition or privilege of her employment and created an abusive working environment. *Lounds v. Lincare, Inc.,* 812 F.3d 1208, 1222 (10th Cir.2015).

Plaintiff correctly notes the Tenth Circuit's statement that because of its inherently fact-intensive nature "the severity and pervasiveness evaluation is particularly unsuited for summary judgment." *Id.* This does not mean that the Tenth Circuit has not established a threshold, however. In the *Lounds* decision itself, the court stated that "the plaintiff must show more than a few isolated incidents of racial enmity." *Id.* at 1223. That is, "[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id.*

The court concludes plaintiff has not met the threshold.[8] Plaintiff has demonstrated some rude and unprofessional conduct towards her, but has not demonstrated that it was based upon her race. On the other hand, the few comments specifically related to race which plaintiff cites were almost exclusively <u>not</u> directed at her. The declaration of Jennifer Forrester (#49-8) states Lincare "as a whole fosters an oppressive environment" (¶6), states that Kolby Lanning was "unprofessional," used "fear tactics, yelling and belittling staff" and made "inappropriate <u>sexist</u> comments" (¶7)(emphasis added), and that upper management at Lincare allowed a "bully environment." (¶8). The declaration of Staci Bell (#49-6) relates that Kolby Lanning said he did not care for a job candidate because the candidate played "the black card." (¶10). Bell also states that on one occasion Lanning treated plaintiff in an "inappropriate" manner. (¶12). This is too vague to create a factual issue.

---

[8] Plaintiff contends "it is certainly a fact question whether Lincare should have known that allowing employees to use racial slurs regarding minorities or permitting unbridled racial innuendo within the workplace at least merited further inquiry." (#49 at page 22 of 31). The court disagrees under the present record.

Jason Asbill admitted to making a statement at work that Kolby Lanning needed to stop picking on plaintiff because she was from Boynton, (purportedly a predominantly African American community) and that one of her family members could "shank" him. Plaintiff contends that another employee, Candace Terry, made a comment that "Mexican and Black kids are the worst when it comes to stealing." Plaintiff relates the (admittedly remarkable) incident that plaintiff used the phrase "what's up" and was disciplined by Lanning for using a racially stereotypical statement. Also, plaintiff contends that when she requested the day off for Martin Luther King Jr.'s birthday, Lanning stated he did not "understand what the deal is. Where I'm from, we don't have a parade."

Ultimately, the court concludes plaintiff's claim does not overcome the policy that Title VII "does not establish a general civility code for the workplace and that a plaintiff may not predicate a hostile work environment claim on the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces." *Id.* at 1222. The record reflects that plaintiff was a highly intelligent and productive employee (when available to work) and the work environment was less than ideal. Summary judgment is nevertheless appropriate.

Plaintiff also alleges discriminatory retaliation. In bringing a claim of retaliation under Title VII, plaintiff must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and

the materially adverse action. *Somoza v. Univ. of Denver,* 513 F.3d 1206, 1212 (10th Cir.2008). An action is materially adverse if it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Green v. Donahoe,* 760 F.3d 1135, 1146 (10th Cir.2014).

On February 20, 2014, plaintiff submitted a 41-page document to the Human Resources Department (#41-25). It is headed "Harassment/Racial Harassment/Discrimination endured by Shartesse McHenry." A plaintiff may demonstrate protected opposition by engaging in conduct that ranges "from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.,* 370 F.3d 1014, 1015 (10th Cir.2004). "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir.2008). The court finds submission of the document satisfies the first element of a prima face case.

The second element is also satisfied, as a reasonable employee would have found the earlier discipline and her ultimate termination to be materially adverse actions. As for the third prong, "[a] causal connection is established where the plaintiff presents evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Corneveaux v. CUNA Mut. Ins. Group,* 76 F.3d 1498, 1507 (10th Cir.1996). Plaintiff primarily relies on temporal proximity, correctly noting "[t]he date of Plaintiff's

termination is key to this inquiry because the closer it occurred to the protected activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999).

Even viewing the record in the light most favorable to plaintiff, however, the court concludes the third element has not been satisfied. As stated, plaintiff submitted her document on February 20, 2014 and was terminated on July 11, 2014, (i.e., almost five months later). "The Tenth Circuit has held that, in the absence of other evidence tending to show causation, a three-to-four month time gap between the protected conduct and the adverse employment action is insufficient to establish causation on its own." *Reed v. State of Oklahoma,* 2016 WL 3945822, *7 (W.D.Okla.2016)(citing cases). Plaintiff has submitted no additional persuasive evidence to bolster the inference of causation.[9] To the extent plaintiff relies upon the purported reprimand for using slang, this appears to have taken place during the week of December 16, 2013, <u>before</u> she submitted her document. Again assuming

---

[9] Plaintiff argues that defendant ran an employment listing for a sales representative before her employment ended. Plaintiff has not, however, established that the posting was for her position. Moreover, the postings were made on July 4, 7 and 8, 2014, <u>before</u> the meeting with Feller referenced below. In any event, the court is inclined to agree with defendant that "[r]unning an employment ad after Plaintiff had far exceeded her allowed medical leave is not proof of discrimination." (#55 at page 8 of 10). Plaintiff also makes reference to her Exhibit 30, labeled as an "audio-taped discussion between Shartese McHenry and Linda Feller," which took place July 11, 2014. This exhibit is in tape form, and no transcript has been provided. Rule 56(c)(1)(A) F.R.Cv.P, requires citation to "particular parts" of evidentiary materials to support a factual position. Plaintiff has not done so. Even taking plaintiff's assertions in her brief as true, the fact that Feller and plaintiff "discussed" (a neutral term) plaintiff's assertions of discrimination and need for an accommodation (#49 at page 14 of 31) does not raise a genuine issue of material fact as to causation. Not Feller, but Jerry Meloy, made the discharge decision. (#49-29).

for the sake of argument that plaintiff has established a prima facie case of retaliation, the court again finds that plaintiff has not raised a genuine issue of material fact as to pretext, given the undisputed fact that plaintiff was not able to return to work.

Finally, plaintiff brings a claim for discrimination under the Americans with Disabilities Amendments Act ("ADAAA"). The ADAAA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. §12112(a). Generally, to establish a prima facie case of discrimination under the ADAAA, a plaintiff must demonstrate (1) she is disabled as defined under the ADAAA; (2) she is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) she was discriminated against because of her disability. *Adair v. City of Muskogee,* 2016 WL 3034084, *5 (10th Cir.2016).

The definition of disability is to be construed in favor of broad coverage. *See* 42 U.S.C. §12102(4)(A). With respect to an individual, a disability is (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *See* 42 U.S.C. §12102(1). Moreover, the scope of a "regarded as" claim is modified by 42 U.S.C. §12102(3)(A) in that a claim may be stated "whether or not the impairment limits or is perceived to limit a major life activity." Defendant challenges plaintiff as to all three alternatives.

Plaintiff does not appear to contest that she has failed to demonstrate an "actual disability" under subsection (A). "'Substantially limits' is not meant to be a demanding

standard.'" 29 C.F.R. §1630.2(j)(1)(i). As defendant notes, however, plaintiff appeared to concede in her deposition (#41-1 at 90 ll.10-22) that she is not limited in caring for herself, walking, seeing, speaking, or hearing. The implementing regulations state that the impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity to be considered substantially limiting." 29 C.F.R. §1630.2(j)(1)(ii). One court has interpreted "substantially limits" as something akin to 'materially restricts.'" *Marsh v. Terra Intern.,* 122 F.Supp.3d 1267, 1281 (N.D.Okla.2015). Plaintiff making no argument in this regard, summary judgment is appropriate in this respect.

Plaintiff does nominally contend she has a record of impairment under subsection (B).[10] "An individual has a record of disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. §1630.2(k)(1). Plaintiff has pointed to no supporting evidence on this point, however. The motion will be granted in this regard as well.

Thus, remaining for consideration is whether plaintiff was "regarded as" having a disability. As previously stated, the scope of a "regarded as" claim is modified by 42 U.S.C. §12102(3)(A) in that a claim may be stated "whether or not the impairment limits or is perceived to limit a major life activity." Thus, "[u]nlike an impairment as defined in subsections (A) or (B), an impairment under §12102(1)(C) need not limit or even be

---

[10] A heading in plaintiff's response brief states that "Lincare regarded Plaintiff as disabled under the ADAAA <u>and</u> she had a record of disability while employed with Lincare." (#49 at page 26 of 31)(emphasis added).

13

perceived as limiting a major life activity – the employer need only regard the employee as being impaired, whether or not the employer also believed that the impairment prevented the employee from being able to perform a major life activity. Under the ADAAA, the only qualification for an impairment in a 'regarded as' claim is that the impairment not be 'transitory and minor.'" *Adair*, at *6. A transitory impairment is an impairment with an actual or expected duration of 6 months or less. *Id.* (citing 42 U.S.C. §12102(3)(B)).

For a plaintiff alleging disability discrimination to show that the employer regarded him as having an impairment, the plaintiff must show that (1) she has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action. *Adair,* at *6.

Plaintiff states "Defendant was aware that Plaintiff suffered from insomnia, spasm of back muscles, abdominal discomfort, rash, anxiety, stress, [fatigue], weight loss, and depression." (#49 at page 27 of 31). Viewing the record in the light most favorable to plaintiff, the court finds a genuine issue of material fact as to whether plaintiff was "regarded as" having a disability.

The parties' briefing having narrowed this claim, however, the court now articulates a more specific version of the prima facie case. A prima facie case of failure to accommodate requires a plaintiff to show: (1) she was a disabled individual within the meaning of the statute; (2) the employer had notice of her disability; (3) with reasonable

14

accommodation, she could perform the essential functions of the position, and (4) the employer refused to make such accommodations. *Spielman v. Blue Cross & Blue Shield of Kan., Inc.,* 33 Fed.Appx. 439, 443 (10th Cir.2002). The court finds plaintiff has failed to raise an genuine issue of material fact as to the fourth element, and thus has failed to state a prima facie case. As defendant notes, plaintiff has not identified the accommodation she requested, and has presented no evidence of refusal to accommodate. On the contrary, defendant gave plaintiff eighteen weeks of leave and plaintiff was still not able to return to work. Summary judgment is granted as to the ADAAA claim.

In any event, summary judgment is appropriate on another basis, albeit one not addressed by the parties. The statute and regulations state that an employer is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong. 42 U.S.C. §12201(h); 29 C.F.R. §1630.2(o)(4). Again, now that the briefing process has focused plaintiff's claim, this legal barrier is made manifest.

It is the order of the court that the motion of the defendant for summary judgment (#40) is hereby granted.

Dated this 27th day of July, 2016.

*Ronald A. White*
―――――――――――――――――――――
HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA